## John Wanamaker v. Lipps.

*Parent and child—Purchase by minor—Liability of parent—Husband and wife—Pleadings—Statement—Sufficiency—Want of averments.*

1. Defendant's minor daughter purchased goods from plaintiff and defendant paid for same on receipt of invoice, at the same time, however, directing plaintiff not to open a credit account, but that all bills were to be approved by defendant before delivery of goods. Thereafter, on two occasions, plaintiff sold goods to said minor and delivered the same without the approval of the parent: *Held*, that defendant was not liable for the payment of goods purchased after the receipt by the plaintiff of said notice.

2. A parent may become liable for necessaries of life furnished to a minor child on failure to provide adequate support or upon the ground of agency. None of these elements, however, appear in this case, either expressly or by estoppel.

3. The question of ratification of the acts of the minor not considered, because of want of averments raising that question.

4. Where there are no averments that the defendant and his wife where separated, nor that he had abandoned her, nor his failure to support her or to make provision for support, nor that the articles were necessary, plaintiff's claim for goods furnished the wife after notice that the husband would not be responsible for payment cannot be sustained.

*Assumpsit.* Affidavit of defence raising questions of law. C. P. Lehigh Co., Jan. T., 1921, No. 94.

*Robert A. Taylor* and *H. V. Fisher*, for plaintiff.

*B. F. McAtee* and *James F. Henninger*, for defendant.

RENO, J., Dec. 18, 1922.—The affidavit of defence raises the question of law whether plaintiff, upon the facts averred, is entitled to recover.

From the statement of claim we gather the following facts: On May 27, 1918, defendant's minor daughter purchased goods at plaintiff's store amounting to $21.50, for which plaintiff forwarded an invoice to defendant. On May 29, 1918, defendant forwarded his check to plaintiff for that sum, and by the accompanying letter gave instructions for the delivery of the articles so

purchased to his daughter at Devon, Pa., and added, "Do not open any credit account, but submit all bills to me for approval and payment before goods are shipped." From May 27, 1918, to June 1, 1918, plaintiff sold goods to defendant's minor daughter aggregating $126.50, which defendant paid on June 18, 1918, at which time he peremptorily demanded that his credit account be closed, and further stated, *inter alia*, "I will not be responsible for anything bought against my name unless you shall receive from me beforehand a special letter written to that effect." Meanwhile, however, that is, between June 1, 1918, and June 8, 1918, plaintiff had sold goods to the daughter for $170.41, and it is for these goods, and also for another item hereinafter referred to, that this suit is instituted. It will be noted that these goods were sold after May 29, 1918, and that the sale of them upon defendant's credit was directly contrary to the instruction contained in the letter of that date. But plaintiff seeks to excuse its failure to obey the command of that letter by its allegation that "before plaintiff could give said letter attention in due course defendant's said daughter had made further purchases."

It is not alleged that defendant failed to provide adequate support for his daughter, nor that the articles purchased by her are necessaries. Plaintiff may recover, therefore, if at all, only upon the ground that the daughter was defendant's agent. Indeed, it is upon the ground of agency, either by estoppel or ratification, that plaintiff asks us to sustain its right to recover. It is not pretended that the daughter was expressly authorized by the defendant to make these purchases, and since the family relation of itself is not sufficient to create the relation of principal and agent, recourse must be had to some other factor. The familiar law of the hornbooks is that in the case of parent and child courts will infer authority upon very slight evidence, *e. g.*, the parent's habit of paying the child's bills without objection: Tiffany Domestic Relations, 238. But certainly payment by a father of bills contracted by his child joining therewith an injunction against the extension of further credit cannot be said to authorize future credits. Yet that is precisely what defendant did in his letter of May 29, 1918; he expressly instructed plaintiff not to open an account; and, contrary to that instruction, plaintiff continued to sell goods to defendant's daughter, and now claims that that very letter is evidence of the authority of the daughter to bind her father. It is impossible to give that letter that construction. That letter was a direct command not to extend the credit, and plaintiff had no right whatever to deviate one particle from it. The fact that the letter could not be given attention before other purchases were made is without relevancy. No account existed before May 27, 1918. On that date the first purchase was made. The account first came into existence on that date and plaintiff wisely refused to deliver the goods purchased that day until they were paid. Why did it not pursue the same course with reference to the goods purchased after June 1, 1918? It had no right to assume that defendant would pay for these goods, and for these reasons: First, no credit account had been opened with defendant's sanction; second, no account could be opened after receipt of the letter of May 29, 1918; third, consequently no account existed on any date between June 1, 1918, and June 8, 1918; and, fourth, the payment of $126.50 for goods sold between May 27, 1918, and June 1, 1918, was not made until June 18, 1918, and having been made ten days after the goods represented by this suit were sold, affords no basis for plaintiff's assumption that defendant approved the extension of credit, or that defendant is thereby estopped from denying that he clothed his daughter with authority. It follows, therefore, that the facts set forth

3 D. & C.

in plaintiff's statement do not disclose either an express agency or an agency by estoppel.

But it is suggested that defendant ratified the acts of the daughter by making no objection to her retention of the goods and by his failure to require their return. The answer to this proposition is threefold: First, there is no allegation in the statement supporting a claim of agency by ratification; second, there is no allegation when or how defendant secured knowledge of the delivery of the articles to his daughter; and, third, there is no allegation that when he did learn of their sale and delivery, that the articles were still in existence or in a condition making return possible. While we are bound, when considering an attack upon the sufficiency of plaintiff's pleadings, to give it the benefit of every fact properly averred, and of all favorable inferences that can be drawn from them, we may not imagine allegations which might have been included.

The other item is for goods sold to the wife of defendant on May 19, 1920. This, too, followed the letter of June 18, 1918, and how plaintiff can hope to recover in the teeth of that letter passes understanding. This charge is not supported by any allegation that defendant and his wife were separated, or that he had abandoned her, or his failure to support her, or the making of provision for support, or that the articles were necessaries. Were it supported by allegations of that nature, it might possibly, notwithstanding the letter of June 18, 1918, be a sustainable item: Cf. Marshall v. Hill, 59 Pa. Superior Ct. 481. But lacking such allegations, there is absolutely no basis for the claim.

Now, Dec. 18, 1922, the questions of law raised by the affidavit of defence are sustained; the plaintiff is granted leave to file an amended statement within fifteen days from the date of service of a copy hereof upon its counsel; in default whereof, upon defendant's præcipe, the prothonotary shall enter judgment for defendant and against plaintiff.

From James L. Schaadt, Allentown, Pa.