| 216  | 345  |
|------|------|
| f218 | 557  |
| f218 | 640  |

## Jolly *v.* Monaca Borough, Appellant.

*Municipalities—Boroughs—Water supply—Water rates.*

A municipal corporation in supplying water, or any other commodity, to its inhabitants individually, acts in a private, and not in a public capacity, and the relation established with the individuals with whom it deals is purely one of contract.

A borough which has established waterworks of its own has a right to impose by ordinance reasonable rates and charges for the supply of water furnished by it to the residents of the borough.

Water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity. The obligation to pay for the use of water rests either on express or implied contract on the part of the consumer to make compensation for water which he has applied for and received, on the terms and conditions made public.

Argued Oct. 17, 1906.     Appeal, No. 163, Oct. T., 1906, by

346        JOLLY *v.* MONACA BORO., Appellant.

defendants, from decree of C. P. Beaver Co., June T., 1906, No. 5, granting and continuing a preliminary injunction in case of A. J. Jolly et al. v. Monaca Borough et al.   Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Reversed.

Bill in equity for an injunction.   Before HOLT, P. J.
The opinion of the Supreme Court states the case.
The court granted a preliminary injunction which it subsequently continued.

*Error assigned* was the decree of the court.

*William J. Mellon,* for appellant.—The borough had a right to collect water rents : Hughes v. Parnassus Boro., 23 Pa. C. C. Rep. 196 ; Millvale Boro., 162 Pa. 374.

*Wm. A. McConnel,* for appellees.—All corporations, whether public or private, derive their power from legislative grants, and can do no act for which authority is not expressly given, or may not be reasonably inferred : Commonwealth v. Erie and North-East R. R. Company, 27 Pa. 339 ; Pennsylvania Railroad Company's Appeal, 93 Pa. 150 ; Bly v. White Deer Mountain Water Company, 197 Pa. 80.

Water companies incorporated under the Act of April 29, 1874, P. L. 73, have authority to fix water rates.   But there is no such power given to boroughs to fix or collect water rents : Carlisle Gas & Water Co. v. Carlisle Water Co., 188 Pa. 51 ; White v. City of Meadville, 177 Pa. 643 ; Metzger v. Beaver Falls Boro., 178 Pa. 1 ; Wilson v. Rochester Borough, 180 Pa. 509 ; Welsh v. Beaver Falls Boro., 186 Pa. 578 ; Dayton v. Quigley, 29 N. J. Eq. 77 ; Ransberry v. Keller, 9 Pa. C. C. Rep. 299.

OPINION BY MR. JUSTICE POTTER, January 7, 1907 :
The borough of Monaca erected waterworks in the year 1895.   For some ten years, the cost of maintaining the works was paid out of the general and special taxes assessed on the taxpayers of the borough.   But on July 13, 1905, the borough passed an ordinance requiring all consumers within the borough

to pay certain rates for the use of water, either by contract according to the number of rooms in the dwelling where the water was used for domestic or household purposes, or by the quantity; and requiring the users of water for manufacturing purposes, or for any purpose other than household or domestic use, to pay therefor such sums as should be fixed by councils, and giving all persons using water for any purpose, the right to meter the same at certain rates per thousand gallons.

In pursuance of the terms of the ordinance, all consumers of water were notified to comply therewith on or before May 1, 1906, or the water would be shut off. Plaintiffs being taxpayers and consumers of water within the borough, filed a bill in equity to restrain the borough officials from shutting off the water from their premises, alleging that the ordinance was illegal because the borough was without legislative authority to enact it.

The trial judge was of the opinion that the power of the borough to provide for the expense of supplying water, was limited to its power of taxation, and that it had no authority to fix water rates by ordinance, and charge consumers of water in accordance therewith. He therefore awarded a preliminary injunction against the borough, which was continued until final hearing. The borough has appealed. The single question before us is as to the right of the borough to levy rates or charges against the consumers of water who make use of its service.

The right of the borough to provide its own water supply is clear. The Act of April 3, 1851, P. L. 320, provides that boroughs incorporated under its provisions shall have power " to establish a nightly watch, to light the streets, to provide a supply of water for the use of the inhabitants, to make all needful regulations for the protection of the pipes, lamps, reservoirs and other constructions or apparatus, and to prevent the waste of water so supplied." While this language contains no express grant of the right to charge water rents, yet it certainly does follow as a natural and reasonable implication. It might well be implied from the grant of power " to prevent the waste of water so supplied ; " for the most effectual method of regulating waste, is to impose a charge for the water taken.

The Act of June 10, 1885, P. L. 81, contains a legislative construction of prior legislation authorizing boroughs to supply

water to their inhabitants.   That act provides " that whenever any borough of this commonwealth is authorized by law to erect and maintain waterworks for supplying water within the limits of such borough, it shall and may be lawful for the author-- ities of any such borough, whenever they may deem it advisable so to do, to supply and to make contracts for supplying water for ordinary and domestic uses to corporations, property own- ers, lessees or occupants outside the limits of such borough, at water rates not less than those required to be paid by property owners within the limits of such borough."   This reference to the rates required to be paid by property owners within the borough, is an express recognition of the right of a borough to charge water rates under existing laws.

This right was also recognized by the Act of May 24, 1878, P. L. 118, which provided that " the proper authorities of any borough of this commonwealth, owning or controlling water- works for the supply of water to the inhabitants of said borough, whenever the schedule of water rents shall have been fixed or limited by general or special act of assembly, shall be and are hereby authorized to change the rates or schedule of rents, from time to time, so that the same shall not, at any time, exceed the rates now limited by law."

While this act applies only to boroughs where the schedule of water rents has been fixed or limited by act of assembly (e. g., Water Works Commrs. v. Sewickley Borough, 159 Pa. 194), it clearly recognizes the fact that boroughs have the power to charge water rents for supplying water to their inhabitants.

We think the court below overlooked the fact that a munic- ipal corporation, in supplying water, or any other commodity, to its inhabitants individually, acts in a private, and not in a public, capacity, and the relation established with the individ- uals with whom it deals is purely one of contract.

The situation was well put by Judge PERSHING in his opinion in Brumm's Appeal, 22 W. N. C. 137, affirmed by this court. He there said : " A municipal corporation which supplies its inhabitants with gas or water does so in its capacity of a pri- vate corporation, and not in the exercise of its powers of local sovereignty.   If this power is granted to a borough or city, it is a special private franchise, made as well for the private emolu- ment and advantage of the city as for the public good.   In sep-

arating the two powers, public and private, regard must be had to the object of the legislature in conferring them.  If granted for public purposes, exclusively, they belong to the corporate body in its public, political or municipal character.  But if the grant was for purposes of private advantage and emolument, although the public may derive a common benefit therefrom, the corporation quoad hoc is to be regarded as a private company.  It stands upon the same footing as would any individual or body of persons upon whom the like special franchises had been conferred."

The same principle is thus succinctly stated by Judge OR-LADY, in Penn Iron Co. v. Lancaster, 25 Pa. Superior Ct. 478 : " While it is no part of the ordinary and necessary duties of the municipal corporation to supply its citizens with gas and water, it is nevertheless true that it may lawfully do so.  Such contracts are not made by a municipal corporation by virtue of incorporation.  The supply of gas and water may be accomplished through the agency of individual or private corporations, and in many instances it is accomplished by such means.  If this power is granted to a borough or city, it is a special private franchise and may be for the emolument and advantage of the city and for the public good, but when such a corporation engages in things not public in their nature, it acts as a private individual ; no longer legislates, but contracts ; and is as much bound by its engagements as a natural person."

If, then, the borough, when furnishing a supply of water, stands upon the same footing as a private corporation, it is entitled to the same privilege of receiving payment for the service rendered.  It would be a strange place to draw the line, to hold that service must be rendered, and water supplied by the borough, without any compensation being made therefor.

Water rates are paid as the compensation or equivalent, by those who choose to receive and use the water, as a commodity furnished by the borough.  No one is compelled to receive or use the water, and when anyone does so, with knowledge of the rates charged, he by implication agrees to pay those rates, and his obligation rests upon contract.

The collection of water rates should not be in any way confused with the exercise of the power of taxation.  In 30 Am.

& Eng. Ency. of Law (2d ed.), 422, the cases are thus summed up : " Water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity. The obligation to pay for the use of water rests either on express or implied contract on the part of the consumer to make compensation for water which he has applied for and received, on the terms and conditions made public."

We are of opinion that the borough of Monaca has the right to impose by ordinance, reasonable rates and charges for the supply of water, furnished by it.

The assignments of error are sustained, and the preliminary injunction granted by the court below is dissolved ; the costs of the proceedings to be borne by the appellees.