# Central Iron & Steel Co., Appellant, v. Harrisburg.

*Municipalities—Water rates—Classification of customers—Contract—Statutes—Repeal—Implied repeal—Cities of the third class—Acts of May 23, 1889, and June 27, 1913.*

1. The Act of June 27, 1913, P. L. 568, by which a general plan was adopted for the government of cities of the third class, revised the whole subject-matter of the Act of May 23, 1889, P. L. 277, regulating municipal water works, and was intended as a substitute therefor, and repealed the former statute.   Even if there had been no express repealing clause, there would have. been an implied repeal of the former statute.

2. The provision in the earlier act for an annual adjustment of water rates in March by the board of water commissioners, which, after approval by councils, could not be changed during the water year, was repealed by the later act, by which the board of water commissioners was abolished, and the control of water rates vested in the council.

3. Where a city of the third class undertakes of itself to furnish water to its inhabitants, it acts in the same capacity as a private corporation, and its contract relations are to be determined as are those of any water company.

4. In such case, it is for the council to designate the rates to be charged, subject to the requirement of reasonableness, unless there is some contract, express or implied, by which the term of service at a fixed sum was determined.

5. If the city stipulates to supply a customer under a special agreement for a special term at a fixed price, it will be held to its agreement; but the customer must establish the fact that there was such a contract, express or implied.

6. The mere fact that water was furnished under an ordinance and was accepted and paid for monthly at the rate fixed by councils is not sufficient from which to imply an agreement to so furnish from year to year; besides there must be mutuality.

7. A city may by ordinance provide that metered customers may pay monthly for the amount which they consume, and that annual customers may pay a fixed sum or a ready-to-serve charge in advance whether they use water or not. This is not improper classification.

8. In such case, a metered customer cannot claim that he is entitled to have his water rate continued without increase during the water year specified for the annual customers.

Argued May 23, 1921. Appeal, No. 8, May T., 1921, by plaintiff, from judgment of C. P. Dauphin Co., Jan. T., 1920, No. 727, for defendant on case-stated in suit of Central Iron & Steel Co. v. Harrisburg. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit to recover amount of certain payments for water. Before HARGEST, P. J.

The opinion of the Supreme Court states the facts.

Judgment for defendant on the case-stated. Plaintiff appealed.

*Errors assigned* appear from the opinion of the Supreme Court.

*C. H. Bergner,* for appellant.—A contract or license to furnish water by a municipality to its residents may not be withdrawn arbitrarily or from mere caprice: Girard Life Ins. Co. v. Phila., 88 Pa. 393; Kohler v. Reitz, 46 Pa. Superior Ct. 350; Jolly v. Boro., 216 Pa. 349; Penn Iron Co., Ltd., v. Lancaster, 25 Pa. Superior Ct. 478; Wheeler v. Phila., 77 Pa. 338; White v. Meadville, 177 Pa. 643; Baily v. Phila., 184 Pa. 594.

*John R. Geyer,* for appellee, cited: Com. v. Elbert, 244 Pa. 535; Smith v. Phila., 81 Pa. 38; Girard Life Ins. v. Phila., 88 Pa. 393; Coffin v. Landis, 46 Pa. 426; McCullough-Dalzell Crucible Co. v. Phila., 223 Pa. 336; P. & R. R. R. v. R. R., 168 Pa. 357; Com. v. Tel. Co., 243 Pa. 586.

OPINION BY MR. JUSTICE SADLER, July 1, 1921:

Harrisburg, a city of the third class, established a system of water supply. By the Act of May 23, 1889, P. L. 277, the control of such a municipal undertaking was placed in a separate department, managed by a board appointed by councils. It was given in charge the regulation of the works, and was clothed with the power to make reasonable rules and regulations governing the use of the water furnished, fixing the charges to be paid by the customers. Section 9 of article XII provided for an annual adjustment of rates in March, which, after approval by councils, could not be changed for and during the water year. In 1913 (Act June 27, 1913, P. L. 568), a general plan for the government of cities of the third class was adopted, by which the board of water commissioners was abolished, and the municipal water business was placed directly in control of the city council. A new system was provided, and all former inconsistent legislation was expressly repealed: Com. v. Elbert, 244 Pa. 535. Even had such provision not appeared, it would be held the subsequent affirmative statute,—introducing a new rule upon the subject, and re-

vising the whole subject-matter of the former, and evidently intended as a substitute therefor,—would impliedly repeal the former one concerning the same matter. Water rates are no longer to be fixed by a board, under the authority, subject to limitations as to permissible changes, given it by section 9, article XII, of the Act of 1889, but such regulations are left to the control of city council.

In 1917, an ordinance was passed classifying the kinds of service rendered, and designating the price to be charged to consumers for each. For water furnished by meters, bills were to be rendered monthly; as to others, the amounts became due annually in advance. Section 6 provided "that the water year shall commence on the first day of January in each year, and all bills for the use of water, except for water metered, or at special rates for less than one year, shall be due and payable on said date." The plaintiff was supplied by meter at a fixed rate per 1,000 gallons. In 1918, a second ordinance was put in force as of April 1st, the attempt to make it relate back to the previous January not having been insisted upon. By its terms, new charges were made, the meter bills being based on 1,000 cubic feet, and a ready-to-serve charge made to this class of consumer. The result was to largely increase the cost to plaintiff, which excess amount from April to the following January was paid under protest. This suit was brought to recover the alleged overcharge. There is no dispute as to the facts, which are set forth in the case-stated filed. The learned court below entered judgment for defendant.

The claim of the plaintiff to recover rests upon the contention that the ordinance of 1917 created a water year, during which period the council was without authority to alter the rates fixed for consumers. It is insisted that the requirement of section 9, article XII, of the Act of 1889, already referred to, was in effect embodied in this municipal act, and, even if not, a city of the third class is still bound by the prohibition made therein against

such change. We are of the opinion that the limitation upon the power of the board of water commissioners to determine rates, fell with the abolition of that body, and the entire matter of regulation is now lodged with the city council. The plaintiff would not be aided if we assume, as strenuously insisted by its learned counsel, that the repeal was only as to the board of control, and that the provisions as to regulation of rates were unaffected. Then the requirement that the water year be from April to April must for like reason be held to be in force, for the Act of 1913 makes no change in it, though it does as to the fiscal year. The new ordinance here complained of became effective on April 1st, and if section 9 was operative, except as to the managers, the new rates were fixed at the appropriate time. The user of the previous year, who had the right to terminate at will, could not insist that the same arrangement be continued for another annual period (Com. v. Central Dist. Tel. Co., 243 Pa. 586) ; but, as heretofore stated, we are of the opinion that the whole section was repealed.

Unless, therefore, there can be found some contract, express or implied, by which the term of service at a fixed sum was determined upon, it was for the council to designate the rates to be charged, subject to the limitation of reasonableness: Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24; Rieker v. Lancaster, 7 Pa. Superior Ct. 149; Ladd v. City of Boston, 170 Mass. 332. In furnishing a supply of water, the municipality acts in the same capacity as a private corporation, and not by reason of obligations imposed upon it by law: Baily v. Phila., 184 Pa. 594; Jolly v. Monaca Borough, 216 Pa. 345; Girard Life Ins. Co. v. Phila., 88 Pa. 393; Bower v. United Gas Improvement Co., 37 Pa. Superior Ct. 113. The right may be exercised through its own officers, or it may permit some company to function in its stead: White v. Meadville, 177 Pa. 643. If it does see fit to act itself, then it must furnish to all, without discrimination (Miller v. Wilkes-Barre Gas Co., 206 Pa. 254), who com-

ply with the reasonable rules which it makes: Kohler v. Reitz, 46 Pa. Superior Ct. 350; Brumm's App., 22 W. N. C. 137. Its contract relationships are to be determined as are those of any water company. If it stipulates to supply a customer under special agreement for a specified term at a fixed price, then it will be held to its obligation (Penn Iron Co. v. Lancaster, 25 Pa. Superior Ct. 478); but, as in all cases, one claiming to enforce a contract must establish the fact that there was such an understanding, express or implied, as he seeks to enforce.

In the present case, the ordinance of 1917 is pointed to as indicating an intention to furnish service for a full year at the rates fixed therein. It is to be noted that metered customers are to pay monthly, and that section 6, which refers to the water year, relates alone to that class of consumers which is compelled to pay an annual charge in advance. The mere fact that water was furnished under the ordinance, and was accepted and paid for by the plaintiff, is not sufficient from which to imply an agreement to so furnish from year to year. No obligation existed on its part to continue the use of the water for any period of time, and its right to discontinue the service cannot be challenged. Until there has been an agreement upon terms by which both parties are bound, there is no contract: Hutchinson Baking Co. v. Marvel, 270 Pa. 378. No understanding, express or implied, which could be enforced, appears here. This was held by the court below, and the assignments of error directed to its action are overruled.

The fifth assignment raised the question of the legality of the ready-to-serve charge imposed by the ordinance of 1918. It is complained that, as fixed, discrimination resulted between customers employing meters and those supplied under flat rates. The exaction of such a claim, if general, has been frequently approved by the Public Service Commission without challenge as to its propriety. In effect, it is a minimum payment demanded of patrons who desire to be placed in position to take ad-

vantage of the service at their convenience, whether actually using the water or not. The municipality cannot discriminate in imposing this or any other rate charged, but it may make reasonable classifications: Barnes Laundry Co. v. Pittsburgh, supra; Rieker v. Lancaster, supra. And we cannot see that this rule has been violated in the present instance. The annual customer pays a fixed sum, whether he uses the water or not. The meter patron has, at all times, a supply at hand for service, but pays only for such quantity as his needs or convenience may dictate. It may be that nothing would be consumed in a particular water period. A charge for such a service is not unfair, and the classification which has been made by the council cannot be said to be arbitrary, but is based on sufficient reason, and should be sustained. The assignment, is, therefore, overruled, as are those relating to the judgment entered.

The judgment is affirmed.